**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JOHN SCOTT, JR.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 17-2181** |
| **WEEKS MARINE, INC.** | * | **SECTION "L"(2)** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.     FACTUAL AND PROCEDURAL HISTORY

This case arises from injuries Plaintiff John Scott, Jr. ("Scott") sustained while delivering a package to Defendant Weeks Marine, Inc. ("Weeks Marine"). R. Doc. 1-1 at 2. On February 6, 2017, Plaintiff brought this action in state court in the 32nd Judicial District Court in Terrebonne Parish. Defendant removed to this Court on the basis of diversity. R. Doc. 1-1 at 1. Plaintiff is a citizen of Louisiana and Defendant is a citizen of New Jersey. R. Doc. 1-1 at 2. Defendant asserts that the amount in controversy exceeds $75,000. R. Doc. 1-1 at 3.

Plaintiff alleges that he sustained severe personal injuries as a result of Defendant's employees' negligence. R. Doc. 1-1 at 4. Plaintiff was employed by UPS as a delivery driver. R. Doc. 1-1 at 2. Plaintiff asserts he was delivering a 500 pound piece of industrial furniture when Defendant's employee negligently operated a forklift, causing the furniture to fall on Plaintiff's hand. R. Doc. 1-1 at 3-4. Plaintiff experienced immediate and severe pain and continues to have pain and swelling in his hand. R. Doc. 1-1 at 3. Plaintiff has undergone significant physical therapy and treatment with a hand specialist. R. Doc. 1-1 at 3. Plaintiff claims as a result of the alleged accident he suffered severe physical pain and disability, mental anguish, medical expenses, disfigurement, lost wages, and lost earning potential. R. Doc. 1-1 at 3. Plaintiff

therefore seeks damages for those injuries in addition to exemplary damages and attorney's fees. R. Doc. 1-1 at 4.

Defendant timely answers and denies all allegations in Plaintiff's complaint. R. Doc. 6 at 1-2. Defendant also asserts Plaintiff failed to state a cause of action upon which relief can be granted. R. Doc. 6 at 2. Defendant avers that any injuries were caused by Plaintiff's own negligence. R. Doc. 6 at 2.

This matter came for trial without a jury on May 4, 2018. The trial lasted one day. The Court has carefully considered the testimony of all of the witnesses, and the exhibits entered into evidence during the trial, as well as the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law. To the extent that any findings of fact may be construed as conclusions of law, the Court hereby adopts them as such. To the extent that any conclusions of law constitute findings of fact, the Court hereby adopts them as such.

## II.    FINDINGS OF FACT

### (1)

Plaintiff John Scott worked as a United Parcel Service ("UPS") freight delivery driver on March 3, 2016. Scott has been employed as a heavy freight delivery driver by UPS since 2006. Scott has a duty to deliver an undamaged product. According to UPS policy and procedure, Scott has 15 minutes allotted per freight delivery. Any time period beyond 15 minutes necessary to complete a delivery requires that Scott inform dispatch of the delay and the reason therefor.

### (2)

Scott's workday is 8+ hours per day. He is paid overtime, time and one-half, for time worked over 8 hours per day. Scott's rate of pay on March 3, 2016 was $27.65/hour, $41.63/hour

for overtime. On January 1, 2017, Scott received a pay raise to $27.90/hour regular time and $41.85/hour overtime. On July 31, 2017, Scott received a pay raise to $28.15/hour regular time and $42.23/hour overtime. On January 8, 2018, Scott received a pay raise to $28.40/hour regular time and $42.60/hour overtime.

(3)

Defendant Weeks Marine is a maritime construction company located in Houma, Louisiana. Justin Self ("Self") worked as the shipping and receiving clerk at Weeks Marine on March 3, 2016. Self started working for Weeks Marine on December 11, 2013. Mr. Self was trained and certified to operate several types of fork lifts as of March 3, 2016, including an extended-boom forklift. Chad Bourg ("Bourg") was Self's supervisor on March 3, 2016.

(4)

As of March 3, 2016, Scott had been delivering to Weeks Marine for 2-3 years. Scott delivers freight but UPS does not provide the equipment necessary to unload deliveries. Scott travels with a manual pallet jack in his truck to be able to move deliveries within the truck. Scott's UPS freight delivery truck is equipped with a hydraulic lift attached to the back of the truck on which deliveries may be placed and lowered to ground level, but this service requires an additional fee to be paid by the recipient. Weeks Marine did not request and/or pay for the use of the hydraulic lift to unload Scott's delivery on March 3, 2016. Instead, it elected to use its own equipment to remove deliveries.

(5)

John Scott delivered a cabinet to Weeks Marine on March 3, 2016. When he arrived at Weeks Marine he parked his truck in the noncemented, gravel area outside the shipping and receiving office. After parking his truck, Scott entered the Weeks Marine's shipping and

receiving office to request that Self unload the cabinet from his truck. After requesting unloading, Scott returned to his truck to wait for Self. Scott waited for approximately ten minutes before going back into the receiving office to again request unloading. It was common practice for Self to ignore delivery drivers. In response to Scott's second request, Self left the office in a huff to unload the delivery.

(6)

After Scott's second request to have his truck unloaded, Self appeared on a Weeks Marine forklift to unload the cabinet. There is conflicting evidence as to which forklift was used to unload the cabinet. The Court finds that this element of the facts is not relevant to the negligence of the parties. Mr. Self used a forklift to unload the March 3, 2016 freight delivery. Plaintiff had already brought the cabinet from the front of the semi-trailer's cargo space to the rear. Although there is some conflict, the Court concludes that the credible evidence supports the conclusion that as Self operated the forklift to unload the cabinet, Scott stood on the ground, driver's side at the back of the truck. Proper unloading of freight requires that the forklift operator insert the forks, bring the pallet to the end of the deck plate (the hydraulic lift that is flush with and extends approximately 16 inches from the end of the truck bed floor), adjust the forks and pallet, tilt the load backwards against the forklift mast, lift, and remove the load.

(7)

To unload the freight delivery on March 3, 2016, Self inserted the forks into the pallet and attempted to unload without moving the pallet to the end of the deck plate or tilting the cabinet against the forklift mast. Mr. Self, operating the forklift, approached the cabinet from the back of the semi-trailer's cargo space, at an angle toward the right-hand (passenger) side of the truck. When Self backed out to unload, Scott saw that the forks were not all the way into the pallet and

the cabinet was unsteady. Contemporaneously with Scott's realization, the cabinet rocked and Scott yelled, "Whoa!" Scott placed his hands on the cabinet to stabilize it. Scott told Self to "bring it down," instead of pulling it out.

(8)

Before Self could lower the pallet, it broke. When the pallet broke, Scott's left hand was smashed between the cabinet and the deck plate. Self's unloading attempt, the cabinet rocking, the pallet breaking, and Scott's hand being smashed all occurred within a matter of seconds and without warning.

(9)

After the pallet broke, Self left the scene on the forklift to get another pallet. When Self returned, he tilted the cabinet on to the new pallet and asked for the bill. When Self asked for the bill, Scott told him that he wanted to file an incident report. Self took Scott to the shipping and receiving office. Mr. Self and Plaintiff reported to Chad Bourg, Weeks Marine's material control supervisor. John Scott met with Self's supervisor, Chad Bourg. Scott told Bourg what happened. Bourg took 3 photographs of Scott's hand. Mr. Bourg prepared the Supervisor's Injury Report, this report states that Mr. Self reported the details of Scott's injury. Joint Exhibit 11. Scott testified that he also filed out and signed an incident report. Weeks Marine does not have a record of an incident report in Scott's handwriting and Scott was not provided a copy of Bourg's incident report.

(10)

X-rays taken at Concentra Urgent Care on March 3, 2016 and May 9, 2016 revealed no fracture or dislocation. Plaintiff's March 3, 2016 x-ray revealed a DIP (distal interphalangeal) joint of the index finger. Plaintiff attended twelve (12) physical therapy visits at Xtreme Physical

Therapy and was discharged on June 29, 2016. Plaintiff performed additional physical therapy at Hand Surgical Associates during December 2016 through March 3, 2017. Scott received two painful hand injections as treatment for the trigger finger injury. Despite extensive conservative therapy, Scott experienced chronic pain and swelling of his left hand due to his injuries. Plaintiff underwent left index finger A1 pulley release and flexor tenosynovectomy on February 2, 2018. Plaintiff was released to full duty, no restrictions, no future medical care necessary, no medical sequelae, and no disability rating, on or about April 12, 2018. Scott continues to experience post-surgical pain and stiffness.

(11)

Liberty Mutual Insurance Company ("Liberty Mutual") is Plaintiff's employer's workers' compensation insurer, and Liberty Mutual paid all of Plaintiff's medical expenses related to the March 3, 2016 accident, the total being $17,256.73. Liberty Mutual paid Plaintiff compensation benefits during his time off from surgery, the total being $6,490.00. Plaintiff worked full duty after the accident. Plaintiff did not work from February 2 to April 12, 2018, while recovering from surgery.

On the date of the accident, John Scott's hourly wage was $27.65. His overtime rate of time and one-half was $41.48. Regular time per day totaled $221.20. He averaged 12.37 overtime hours per week, 2.474 hours per day. Overtime average per day totaled $102.63. John Scott's total gross wages per day at the time of the accident was $303.83.

(12)

John Scott was treated by Concentra Urgent Care and Hand Surgical Associates for his injuries. He had to take off the entire day of work for doctor appointments because there is no

part-time freight delivery. In total, John Scott attended eight medical appointments for a total of $2,880.73 in lost wages for medical appointments.

a. On May 9, 2016, July 1, 2016 and December 7, 2016, John Scott attended medical visits. At that time, his hourly wage was $27.65 at 8 hours per day. His overtime wage was $41.48 at an average of 2.474 hours per day.

b. On January 4, 2017, February 1, 2017, March 8, 2017, and June 13, 2017, John Scott attended medical visits. At that time, his hourly wage was $27.90 at 8 hours per day. His overtime wage was $41.85 at an average of 2.474 hours per day.

c. On June 31, 2017 John Scott attended a medical visit. At that time, his hourly wage was $28.15 at 8 hours per day. His overtime wage was $42.23 at 2.474 hours per day.

d. On January 31, 2018, John Scott attended a pre-operative visit at Omega Hospital in preparation for his February 2, 2018 surgery. At that time, his hourly wage was $28.40 at 8 hours per day. His overtime wage was $42.60 at 2.474 hours per day.

e. Scott was out of work from February 2, 2018 through, and including, March 30, 2018 for post-surgical rehabilitation. While Scott was out recovering from surgery, he received only $649.00 in weekly indemnity benefits, totaling $5,192.00. Scott's average weekly wage was $1,618.82.

f. Scott pays approximately $27.00 per week for health insurance. While he was out on post-surgical rehab, Scott had to pay for all of his health insurance. Scott issued a check to UPS for $422.50. The difference between Scott's $27.00 per week payment and the amount he had to pay while on leave is $206.50, which constitutes lost wages as it was paid out of his already-taxed income.

(13)

On September 25, 2017, John Scott underwent an IME scheduled by Weeks Marine. On the IME date, John Scott's hourly wage was $28.15 at 8 hours per day with an overtime wage of $42.23 at 2.474 hours per day.

(14)

As a result of the injuries sustained on March 3, 2016, Scott experienced pain and suffering. Scott was significantly limited in the use of his dominant left hand. As a result of the injuries, Scott was denied the opportunity to enjoy his brief times off work. He was unable to operate his Harley Davidson for two years. Scott was unable to maintain his yard and garden the way he did prior to the accident. Scott's grip strength significantly diminished as a result of the injuries.

(15)

The Court finds as a factual matter that Defendant is partly at fault for the cause of Plaintiff's accident and injuries. By failing to properly insert the forks of the forklift into the pallet, readjust the forks, and tilt the cabinet back, Self created an unsafe and unstable unloading situation that caused the cabinet to rock and fall during the unloading process. Self did not properly operate the forklift while attempting to unload the UPS freight delivery. Self's haste and negligence were a cause of Scott's injuries.

(16)

The Court also finds as a factual matter that Plaintiff is partly at fault for the cause of his accident and injuries. While Plaintiff's decision to put his hands up to keep the cabinet from rocking was likely instinctive, Plaintiff had no responsibility to participate in the unloading of the cabinet after Mr. Self, an employee of Weeks Marine, began the unloading process.

8

Therefore, Mr. Scott's fault lies not in the instinctive placing of his hands on the cabinet, but in standing close enough to the cabinet in the first place. By standing next to the cabinet in this manner, Mr. Scott placed himself in the zone of danger. Because Scott should have been clear of the cabinet and forklift during the unloading process, he is partially at fault for his injuries.

### III.     CONCLUSIONS OF LAW

(1)

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, which provides subject matter jurisdiction over claims between diverse parties where the amount in controversy exceeds $75,000. Venue is proper because the Defendants are subject to the personal jurisdiction of this Court.

(2)

Neither party has requested a jury trial, and as such, this matter is appropriately being tried to the bench as opposed to a jury.

(3)

"Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Louisiana state law is applicable in this case because the incident took place in Louisiana and all parties are residents of Louisiana.

(4)

The matters before this Court include determination as to whether John Scott and/or Weeks Marine, through its employee Justin Self, were negligent under Louisiana substantive law on general negligence. La. Civ. Code art. 2315.

(5)

When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as 'third person') other than those persons against whom the said employee's rights and remedies are limited in R.S. 23:1032, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations, or personal representatives may obtain damages from or proceed at law against such third person to recover damages for the injury, or compensable sickness or disease.

La. R.S. 23:1101(A). John Scott was injured by a third-party tortfeasor, Weeks Marine, while in the course and scope of his employment as a UPS freight delivery driver.

(6)

"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. Justin Self's operation of the forklift to unload the cabinet was one of his duties as a Weeks Marine employee. Weeks Marine knew that "unloading a delivery was a hassle" for Justin Self, Weeks Marine's shipping and receiving clerk. Weeks Marine knew that Justin Self "ignored" delivery drivers. [Plaintiff's Exhibit 2, Excerpt from Chad Bourg's Deposition] Weeks Marine is partially liable for John Scott's injuries under the doctrine of respondeat superior because its employee, Justin Self, negligently operated a forklift and causing Scott's injury while in the course and scope of his employment.

(7)

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315(A). "Louisiana courts conduct a duty-risk

analysis to determine whether to impose liability" on a negligence cause of action. *Nagle v. Gusman*, 61 F. Supp. 3d 609, 620 (E.D. La. 2014). To prevail under a negligence claim, the plaintiff must prove five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element);
> (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element);
> (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
> (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and
> (5) actual damages (the damages element).

*Chanthasala v. Deshotel*, 17- 0521 (La. App. 4 Cir. 12/27/17); 234 So.3d 1103, 1108 (quoting *Roberts v. Benoit*, 605 So.2d 1032, 1051 (La. 1991)).

(8)

Businesses and their employees owe, to visitors and other employees, "a 'duty of care to competently operate . . . equipment.'" *Douglas v. Cajun Constructors, Inc.*, 2011 WL 6210759 * 3. "Actionable negligence results from the creation of an unreasonable risk of injury to others." Brown, 422 So.2d at 216. "To ascertain if the risk is unreasonable, [the court] must consider the likelihood that injury may occur and the seriousness of the injury." Id. at 216.

The Court finds as a matter of law that Mr. Self had a duty to operate the forklift, and remove the freight delivery of the cabinet, in such form and fashion as to not cause harm to Plaintiff Scott. Justin Self had a duty to properly and safely operate the Weeks Marine forklift as a reasonably prudent operator. *See Brown v. Lykes Bros. S.S. Co., Inc.*, 422 So.2d 213, 216 (La. 4 Cir. 1982).

(9)

Breach of a duty is the failure to exercise reasonable care under the circumstances. *Nagle*, 61 F. Supp. 3d at 622. Prior to unloading a delivery with a forklift, Justin Self was required to "[look] at the pallet … make sure [he] can pick it up with that or if [he'd] have to move the items on another pallet." Justin Self knew that the cabinet being delivered "was not on the best of pallets," yet he proceeded with unloading. [Plaintiffs' Exhibit 1, Excerpt of Justin Self's Deposition] Justin Self also failed to follow unloading protocol by attempting to lift and unload the cabinet, skipping the steps of readjusting the forks when the cabinet was brought to the end of the deck plate. Failing to readjust the forks and tilt the cabinet back against the mast of forklift caused it to rock and the pallet to break. Therefore, Justin Self breached his duty to properly and safely unload the UPS delivery as an ordinarily prudent forklift operator.

(10)

"The determination of cause-in-fact [in a negligence suit] is a 'but for' inquiry." *Alombro v. Campbell "66" Express, Inc.*, 361 So.2d 453, 456 (La. App. 4 Cir. 1978). Because Self's negligent operation of the forklift cause the cabinet to rock and fall, "but for" Justin Self's negligent operation of the forklift, John Scott would not have been injured.

(11)

Legal cause or the scope of protection inquiry has been explained as follows:

> The essence of the … inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the [duty]. It is a hazard problem. Specifically, it involves the determination of whether the … duty … [was] designed, at least in part, to afford protection to the class of claimants of which the plaintiff is a member from the hazard [encountered].

*Chanthasala*, 17- 0521; 234 So.3d at 1108 (quoting *Peterson v. Doe*, 94-1013, p. 8 (La. App. 4 Cir. 12/15/94); 647 So.2d 1288, 1293). "In short, the inquiry contemplates whether the injury the

plaintiff suffered is one of the risks encompassed by the rule of law that imposed the duty." *Id.* (citing *Fowler v. Roberts*, 556 So.2d 1, 5 (La. 1989)). "The finding of legal causation 'requires a proximate relation between the actions of a defendant and the harm which occurs and such relation must be substantial in character.'" *Id.* (quoting *Roberts*, 605 So.2d at 1041).

> In determining whether there is a duty-risk relationship for a defendant's substandard conduct and a plaintiff's harm, Louisiana jurisprudence employs an ease of association analysis to assess liability. The case of association inquiry asks:
>> How easily does one associate the plaintiff's complained-of harm with the defendant's conduct? … Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone. Absent an ease of association between the duty breached and the damages sustained, we have found legal fault lacking.

*Id.* at 1108-09 (citations omitted) (quoting *Roberts*, 605 So.2d at 1045).

(12)

"Defendant and its employees had a duty towards persons like Plaintiff to 'operate heavy equipment in a safe and prudent manner.'" Douglas, 2011 WL 6210759 at *3. As the Weeks Marine shipping and receiving clerk, Justin Self owed John Scott a duty to operate the forklift as a careful and prudent forklift operator when unloading freight delivery from John Scott's UPS truck. It was foreseeable that hastily operating a forklift would create an unreasonable risk of harm for John Scott, a pedestrian bystander. It was also foreseeable that the cabinet could rock if not tilted back against the mast of the forklift. It was also foreseeable that a pallet could break if the forks were not all the way in the pallet during the unloading process.

(13)

John Scott suffered actual damages because of Justin Self's negligent operation of the Weeks Marine forklift while unloading the delivery from John Scott's UPS truck. John Scott sustained soft tissue injury to his left, dominant, hand, and a "trigger finger" injury which

required an index finger A1 pulley release and flexor tenosynovectomy. Surgery was performed on January 29, 2018. John Scott lost wages, personal time, and vacation time due to his injuries.

(14)

The Court finds that Defendant is 80% at fault for the cause of Plaintiff's accident and injuries. By failing to properly insert the forks of the forklift into the pallet, readjust the forks, and tilt the cabinet back, Self created an unsafe and unstable unloading situation that caused the cabinet to rock and fall during the unloading process. Self did not properly operate the forklift while attempting to unload the UPS freight delivery. Self's haste and negligence were a cause of Scott's injuries.

(15)

John Scott had a duty to deliver an uncompromised product to Weeks Marine. "Carriers and watermen are subject, with respect to the safe keeping and preservation of the things intrusted to them, to the same obligations and duties which are imposed on tavern keepers in the title: Of Deposit and Sequestration." La. Civ. Code art. 2751; *see also* La. R.S. 45:1097. As a carrier, UPS is required to deliver an uncompromised product. La. Civ. Code art. 2751.

(16)

"If a person suffers injury . . . as the result partly of his own negligence and party as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury." La. Civ. Code art. 2323(A). "For the affirmative defense of comparative fault, the defendants have the burden of proof. A party asserting comparative fault bears the burden of proof by a preponderance of the evidence that the other party's fault was a cause in

fact of the damage complained of." *Pruitt v. Nale*, 45,483 (La. App. 2 Cir. 8/11/2010); 46 So.3d

780, 783.

"Comparative negligence is determined by the reasonableness of the party's behavior

under the circumstances." *State Farm Mutual Auto. Ins. Co. v. McCabe*, 14-501, 14-502 (La.

App. 3 Cir. 11/5/2014); 150 So.3d 595, 599 (quoting *Khaled v. Windham*, 94–2171, p. 4 (La.

App. 1 Cir. 6/23/95); 657 So.2d 672, 676).

> [V]arious factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was being sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 974 (La. 1985) (quoting Unif.

Comparative Fault Act 2(b) and Comment).

(17)

> The doctrine of sudden emergency provides that in determining whether a person has acted as reasonable man, the trier of fact must consider as one of the circumstances that the person was acting in an emergency. The doctrine is used to excuse postemergency conduct which under ordinary circumstances would constitute negligence. If defendant's negligence proximately caused the emergency as the evidence strongly suggests, the doctrine undoubtedly would be unavailable to defendant.

*Trezza v. Dame*, 370 F.2d 1006, 1008 (1967).

(18)

While John Scott had a duty to deliver an uncompromised product, his responsibility

ended when Mr. Self, as an employee of Weeks Marine, began to unload the cabinet. However,

Scott chose to stand near the cabinet as it was being unloaded, in the "zone of danger." It was

forseeable that if something went wrong with the unloading process that Scott could be injured when standing this close to the cabinet and forklift. Thus, it was unreasonable for Scott to be standing close enough to the cabinet and forklift during the unloading process to reach out and touch it. After making the choice to stand next to the cabinet, John Scott's placing of his hands on the rocking cabinet to steady it was likely instinctive under the circumstances. As such, John Scott's action to place his hands on the cabinet falls under the "sudden emergency doctrine." However, his choice to stand next to the cabinet was made before the cabinet began to rock and so cannot be considered a response to the "sudden emergency." Therefore, Scott's choice to stand next to the cabinet while it was being unloaded constitutes some comparative fault for his injury.

(19)

The Court finds that Plaintiff is 20% at fault for the cause of his accident and injuries. While Plaintiff's decision to put his hands up to keep the cabinet from rocking was likely instinctive, Plaintiff had no responsibility to participate in the unloading of the cabinet after Mr. Self, as an employee of Weeks Marine, began the unloading process. Therefore, Mr. Scott's fault lies not in the instinctive placing of his hands on the cabinet, but in standing close enough to the cabinet in the first place. By standing next to the cabinet in this manner, Mr. Scott placed himself in the zone of danger. Because Scott should have been clear of the cabinet and forklift during the unloading process, he is partially at fault for his injuries.

(20)

"Compensatory damages are divided into special damages and general damages." *Romano v. Jefferson Parish Sheriff's Office*, 13-803 (La. App. 4 Cir. 3/26/2014); 138 So.3d 688, 693. "General damages are those that may not be fixed with pecuniary exactitude. Such damages

involve mental or physical pain or suffering, inconvenience, the loss of physical enjoyment, or other losses of life or lifestyle that cannot be definitively measured in monetary terms." *Wright v. Wal-Mart Stores, Inc.*, 31,764 (La. App. 2 Cir. 5/5/1999); 737 So.2d 153, 156. "Loss of enjoyment of life is separate and independent from physical pain and suffering." In re *Medical Review Panel on Behalf of Laurent*, 94-1661 (La. App. 1 Cir. 6/26/1995); 657 So.2d 713, 722. "Vast discretion is accorded the trier of fact in fixing general damage awards." *Dufrene v. Gautreau Family, LLC*, 07 -467, 07 -547 (La. App. 5 Cir. 2/22/2008); 980 So.2d 68, 81.

(21)

Since the accident on March 3, 2016, John Scott suffered pain and swelling on a daily basis. That pain and suffering was exacerbated further by John Scott having to work 8+ hours per day, 5 days per week. Post-surgically, John Scott still experiences tenderness and stiffness in his hand. That tenderness and stiffness is exacerbated by working 8+ hours per day, 5 days per week. The constant pain and swelling in John Scott's dominant hand added a great deal of stress to his life. UPS enforces a strict delivery schedule that John Scott is required to meet on a daily basis. He was forced to fight through the pain in order to work. Post-surgically, he is still fighting through tenderness and stiffness. Since the accident, John Scott has been unable to garden and maintain his lawn as he did in the past because he could not grip the lawn equipment. John Scott and his wife were unable to venture out on motorcycle excursions because John Scott could not operate the clutch or the brake on his Harley Davidson. Harley riding is an activity that brings John Scott and his wife great joy. Therefore, John Scott is entitled to general damages for past, present and future physical and mental pain and suffering and loss of enjoyment of life.

The award for two years past and present pain and suffering and loss of enjoyment is clearly justified by the record. However, future pain and suffering is more problematic.

According to Plaintiff's own testimony he is already 90% healed and his present pain does not prevent him from working. Furthermore, Plaintiff's doctor does not anticipate any long-term pain or problems as a result of this injury. Therefore, credible evidence would support future pain and suffering award for one year.

(22)

"Special damages are those which either must be specifically pled or have a 'ready market value,' such that the amount of the damages theoretically may be determined with relative certainty." *Romano*, 13 -803; 138 So.3d at 694. "Calculation of the lost income stream begins with the gross earnings of the injured party at the time of the injury." *Randolph v. Laeisz*, 896 F.2d 964, 967 (5th Cir. 1990).

(23)

John Scott was in the course and scope of employment at the time of his injury on March 3, 2016. Liberty Mutual is UPS' workers' compensation carrier. Liberty mutual paid $17,256.73 for John Scott's medical treatment. This amount has been stipulated to by the parties. John Scott specifically pled damages for medical expenses in his Petition for Damages, Paragraph 10. Thus, he is entitled to $17,256.73 in special damages for medical treatment.

(24)

John Scott lost wages due to the injuries he sustained in the subject accident.[1] Prior to the accident, John Scott's work day was not a typical 8 hour day. Every week John Scott had overtime hours at time-and-one-half.[2] John Scott specifically pled lost wages in his Petition for Damages, Paragraph 10.

---

[1] Scott used vacation, sick, or personal time for some days missed. Those days are included in lost wages due to loss of vacation, sick, or personal time due to injuries sustained in the subject accident.

[2] This time is calculated according to the 4 weeks prior to the March 3, 2016 accident.

a.  Light Duty Lost Wages

On the date of the accident, John Scott's hourly wage was $27.65. His overtime rate of time and one-half was $41.48. Regular time per day totaled $221.20. He averaged 12.37 overtime hours per week, 2.474 hours per day. Overtime average per day totaled $102.63. John Scott's total gross wages per day at the time of the accident was $303.83.

Immediately following the accident on March 3, 2016, UPS placed John Scott on light duty for one month/4 weeks: Friday, March 4, 2016 through, and including, Friday, April 1, 2016. While on light duty, John Scott was only permitted to work 8 hours per day. Over the 4 weeks on light duty, John Scott lost 49.48 hours of overtime, totaling $2,052.43. John Scott is entitled to $2,052.43 in lost wages while reassigned to light duty for one month/4 weeks after his accident.

b.  Lost Wages for Medical Appointments

John Scott was treated by Concentra Urgent Care and Hand Surgical Associates for his injuries. He had to take off the entire day of work for medical appointments because there is no part-time freight delivery. In total, he attended 8 medical appointments for a total of $2,880.73 in lost wages for medical appointments.

   i.  On May 9, 2016, July 1, 2016 and December 7, 2016, John Scott attended medical visits. At that time, his hourly wage was $27.65 at 8 hours per day. His overtime wage was $41.48 at an average of 2.474 hours per day. Each day missed totals $303.83 in lost wages. John Scott is entitled to $911.49 in lost wages for these 3 medical visits.

   ii.  On January 4, 2017, February 1, 2017, March 8, 2017, and June 13, 2017, John Scott attended medical visits. At that time, his hourly wage was

$27.90 at 8 hours per day. His overtime wage was $41.85 at an average of 2.474 hours per day. Each day missed totals $326.74 in lost wages. John Scott is entitled to $1,306.96 in lost wages for these 4 medical visits.

iii. On June 31, 2017 John Scott attended a medical visit. At that time, his hourly wage was $28.15 at 8 hours per day. His overtime wage was $42.23 at 2.474 hours per day. Each day missed totals $329.68 in lost wages. John Scott is entitled to $329.68 in lost wages for this medical visit.

iv. On January 31, 2018, John Scott attended a pre-operative visit at Omega Hospital in preparation for his February 2, 2018 surgery. At that time, his hourly wage was $28.40 at 8 hours per day. His overtime wage was $42.60 at 2.474 hours per day. Each day missed totals $332.60. John Scott is entitled to $332.60 in lost wages for this medical visit.

c. Independent Medical Examination

On September 25, 2017, John Scott underwent an IME scheduled by Weeks Marine. At that time, his hourly wage was $28.15 at 8 hours per day. His overtime wage was $42.23 at 2.474 hours per day. Each day missed totals $329.68 in lost wages. John Scott is entitled to $329.68 in lost wages for this IME.

d. Surgery and Post-Surgical Recovery

John Scott underwent an index finger A1 pulley release and flexor tenosynovectomy on February 2, 2018. He returned to work on April 2, 2018 after 8 weeks of recovery and rehabilitation. Liberty Mutual, UPS' workers' compensation carrier, determined that John

Scott's average weekly wage was $1,618.69. John Scott is entitled to $12,949.52 in lost

wages for missing 8 weeks of work for surgical recovery and rehabilitation.

    e.   Health Insurance Payment

John Scott pays approximately $27.00 per week for health insurance. While on leave for

surgery, recovery and rehabilitation, John Scott had to pay $427.50 directly to UPS for

his health insurance. As such, John Scott is entitled to $206.50 as reimbursement for the

health insurance payment while on post-surgery, workers' compensation leave.

(25)

Louisiana state law on pre-judgment interest is applied in diversity cases. *See Havis v.*

*Petroleum Helicopters, Inc.*, 664 F.2d 54 (5th Cir. 1981). "The court shall award interest in the

judgment as prayed for or as provided by law." La. Code Civ. Proc. art. 1921. "Legal interest

shall attach from date of judicial demand, on all judgments, sounding in damages, 'ex delicto',

which may be rendered by any of the courts." La. R.S. 13:4203.

(26)

Louisiana law on taxing costs is applied in diversity cases. *See Cates v. Sears, Roebuck &*

*Co.*, 928 F.2d 679, 689-90 (5th Cir. 1991). "Unless the judgment provides otherwise, costs shall

be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise

provided by law, the court may render judgment for costs, or any part thereof, against any party,

as it may consider equitable." La. Code Civ. Proc. art. 1920.

(27)

The Court finds that as to damages, Weeks Marine is 80% liable and John Scott is 20%

liable.

The award in this matter is summarized as follows:

General Damages

Past, present, and future physical pain and suffering;
Past, present, and future mental pain and suffering; and
Loss of enjoyment of life

$30,000.00

Special Damages

| | |
|---|---|
| Medical Treatment | $17,256.73 |
| Lost Wages | $18,418.86 |
| Total | $65,675.59 |

In addition, the Court awards judicial interest and taxed costs.

(28)

As stipulated by the parties, Liberty Mutual Insurance Company is entitled to

reimbursement by priority and entitled to be paid first out of any Judgment in an amount

sufficient to reimburse it for benefits paid pursuant to the Louisiana State Workers'

Compensation Act, L.S.A.– R.S. 23:1102, et seq., totaling $22,448.73, as set forth above, as well

as for any additional sums paid by Liberty Mutual Insurance Company in Louisiana State

Workers' Compensation Act benefits through the date of any Judgment in the captioned

proceeding and until reimbursed.

Pursuant to the provisions of the Louisiana State Workers' Compensation Act, L.S.A. –

R.S. 23:1102, et seq., Intervenor, Liberty Mutual Insurance Company, is entitled to a credit

based on the net recovery of John Scott, Jr. in the captioned proceeding, if any, toward an offset

of any potential past or future exposure Liberty Mutual Insurance Company may have under the

Louisiana State Workers' Compensation Act. R. Doc. 44.

When recovering worker's compensation benefits in intervention, the intervenor's rights

are identical to the plaintiff employee's rights to recover from the defendant. Where the

plaintiff's rights are reduced based on comparative negligence, the intervenor's recovery is reduced by the same percentage. *See* La. R.S. 23:1101(B); *Stapleton v. Great Lakes Chemical Corp.*, 24386, (La. App. 2 Cir. 5/4/94); 639 So.2d 300, 302.

(29)

Therefore, of the total award ($65,675.59), Intervenor Liberty Mutual is entitled to recover $17,958.98 and Plaintiff Scott is entitled to recover $34,581.49 plus judicial interest and costs.

New Orleans, Louisiana, this 7th day of May, 2018

UNITED STATES DISTRICT JUDGE